UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JEREMY CANTOR; ASHLEY ALLEN; DOMINICK GROSSI, ANTHONY HARRISON; HEATHER HYDEN; HALEY SAMS; and VITO SCAROLA, on behalf of themselves and all others similarly situated, | Case No. _1:21-cv-213 (TJM/CFH)_ |
| | CLASS ACTION COMPLAINT |
| _Plaintiffs,_ | DEMAND FOR JURY TRIAL |
| v. | |
| BEECH-NUT NUTRITION COMPANY, | |
| _Defendant._ | |

Plaintiffs Jeremy Cantor ("Plaintiff Cantor"), Ashley Allen ("Plaintiff Allen"), Dominick Grossi ("Plaintiff Grossi"), Anthony Harrison ("Plaintiff Harrison"), Heather Hyden ("Plaintiff Hyden"), Haley Sams ("Plaintiff Sams"), and Vito Scarola ("Plaintiff Scarola" and collectively with Plaintiff Cantor, Plaintiff Allen, Plaintiff Grossi, Plaintiff Harrison, Plaintiff Hyden, and Plaintiff Sams, "Plaintiffs") on behalf of themselves and the Class and Subclasses of all others similarly situated defined below, bring this complaint against defendant Beech-Nut Nutrition Company ("Defendant" or "Beech-Nut") for its negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the heavy metals or other ingredients that do not conform to the labels, packaging, or advertising of, or statements concerning, Defendant Beech-Nut's products sold throughout the United States, including in this District. Plaintiffs seek both injunctive relief and damages on behalf of the proposed Class and Subclasses (as defined below) including: (i) advertising, and statements of, allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief.  Given the concealed

nature of Defendant Beech-Nut's conduct, Plaintiffs believe that an opportunity to conduct

discovery will reveal further support for Plaintiffs' allegations.

## INTRODUCTION

1.      Plaintiffs bring this action on behalf of themselves and a proposed class of

individuals that bought baby food sold by Beech-Nut that was, unbeknownst to Plaintiffs and

members of the Class and Subclasses (but known to Beech-Nut), tainted with numerous toxic

heavy metals. Plaintiffs and members of the Class and Subclasses seek injunctive and monetary

relief based on Beech-Nut's false, deceptive, and misleading business practices in violation of

the consumer protection statutes of the home states of Plaintiffs and members of the Class and

Subclasses.

2.      Parents and other caregivers, including Plaintiffs and members of the Class and

Subclasses, reasonably believe that the baby food they purchase for their babies will be healthy,

nutritious, and non-toxic. Alarmingly, they were wrong. On February 4, 2021, the United States

House of Representatives Committee on Oversight and Reform's Subcommittee on Economic

and Consumer Policy (the "House Subcommittee") released a report entitled "Baby Foods Are

Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury"[1] (the "Report").

According to the Report, several brands of baby food sold in the United States, including those

sold by Defendant Beech-Nut, contain unsafe levels of toxic heavy metals including metals such

as arsenic, lead, and cadmium.

---

[1] *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*,
Staff Report (the "Report"), Subcommittee on Economic and Consumer Policy of the Committee
on Oversight and Reform, at 2, Feb. 4, 2021,
https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-
04%20ECP%20Baby%20Food%20Staff%20Report.pdf (accessed February 24, 2021).

3.      Given the health risks associated with high levels of toxic heavy metals, the presence of these substances in baby food is a material fact to consumers. Indeed, consumers, such as Plaintiffs and members of the Class and Subclasses (defined below), are unwilling to purchase baby food that contains unsafe levels of toxic heavy metals.

4.      Baby food manufacturers hold a special position of public trust; consumers believe that they would not sell products that are unsafe.  Defendant Beech-Nut knew that the presence of toxic heavy metals in their baby food was a material fact to consumers, yet omitted and concealed the unsafe level of heavy metals from consumers. To this day, Defendant Beech-Nut's baby foods containing dangerous levels of toxic heavy metals bear no label or warning to parents.

5.      Accordingly, Plaintiffs bring this suit on behalf of themselves and a Class of similarly situated individuals for damages resulting from Defendant's sale of baby food that contained unsafe levels of toxic heavy metals.

## PARTIES

6.      Plaintiff Jeremy Cantor is a citizen of the State of Colorado.

7.      Plaintiff Ashley Allen is a citizen of the State of Michigan.

8.      Plaintiff Dominick Grossi is a citizen of the Commonwealth of Pennsylvania.

9.      Plaintiff Anthony Harrison is a citizen of the State of Missouri.

10.      Plaintiff Heather Hyden is a citizen of the State of Texas.

11.      Plaintiff Haley Sams is a citizen of the State of Georgia.

12.      Plaintiff Vito Scarola is a citizen of the State of Florida.

13.      Defendant Beech-Nut Nutrition Company is a Delaware corporation with its principal place of business located at One Nutritious Place, Amsterdam, New York, 12010.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Classes exceed $5,000,000.00, exclusive of interest and costs, and the Plaintiffs and most members of the proposed Classes are citizens of a state different from Defendant.

15.     The Court has personal jurisdiction over the Defendant. The Defendant has transacted business and maintained substantial contact throughout the United States, including in this District.  Defendant's conduct has taken place in, been directed at, and has had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

16.     Venue is proper in this District because a substantial portion of the events complained of herein took place in this District, and this Court has jurisdiction over the Defendant. Specifically, Defendant's decision-making regarding the marketing of the baby foods at issue, including the decision to omit the material information regarding the toxic heavy metals in the products, was located in this District. Furthermore, Defendant is headquartered in this District.

## FACTUAL BACKGROUND

### I.   BEECH-NUT NUTRITION COMPANY

17.   Defendant Beech-Nut manufactures, markets, advertises, labels, distributes, and sells baby food products throughout the United States and describes itself as "dedicated to championing real food for a healthier world."[2]

18.   Beech-Nut promotes its food as premium baby food and in doing so, has marketed its products as "safe", "natural and organic", "real food for babies", "free from artificial preservatives, colors and flavors",[3] and states that "nothing artificial [is] added" to the baby food it produces.[4]

19.   Beech-Nut also promotes that, to ensure its products are safe for consumption, Beech-Nut employs a thorough testing program. For example, Beech-Nut's website states that Beech-Nut has "been testing [] ingredients for heavy metals since 1985, and [Beech-Nut is] aware of no higher standards in the industry than the ones [Beech-Nut] employ[s]." To accomplish this, Beech-Nut "test[s] for up to 255 pesticides and heavy metals (like lead, cadmium, arsenic and other nasty stuff). Just like you would, we send the produce back if it's not good enough. Even in the case of our infant rice cereal, which is already below the proposed FDA limit for arsenic in rice cereals, we still test every, single lot to ensure it's safe to consume."[5]

---

[2] Our Story, Beech-Nut, https://www.beechnut.com/our-story/ (accessed Feb. 23, 2021).

[3] *Id.*

[4] Food Quality & Safety, Beech-Nut, https://www.beechnut.com/food-quality-safety/ (accessed Feb. 23, 2021).

[5] Food Quality & Safety, Beech-Nut (Sept. 4, 2019), https://web.archive.org/web/20190904110613/https://www.beechnut.com/food-quality-safety/ (accessed Feb. 24, 2021).

20.     Beech-Nut produces several types of baby foods, including, but limited to the following (the "Beech-Nut Baby Foods"):

- Beech-Nut Rice Single Grain Baby Cereal – Stage 1
- Beech-Nut Organics Oatmeal Whole Grain Baby Cereal – Stage 1;
- Beech-Nut Organics Prunes;
- Beech-Nut Naturals Prunes;
- Beech-Nut Organics Pear, Kale, & Cucumber
- Beech-Nut Organics Apple, Raspberries, & Avocado
- Beech-Nut Organics Apple, Kiwi, & Spinach
- Beech-Nut Organics Banana, Cinnamon, & Granola
- Beech-Nut Organics Pears
- Beech-Nut Organics Sweet Potatoes;
- Beech-Nut Classics Sweet Carrots – Stage 2;
- Beech-Nut Organics *Just* Carrots – Stage 1;
- Beech-Nut Naturals *Just* Sweet Potatoes – Stage 1;
- Beech-Nut Organics *Just* Sweet Potatoes – Stage 1;
- Beech-Nut Classics Sweet Potatoes – Stage 2;
- Beech-Nut Classics Sweet Peas – Stage 2;
- Beech-Nut Naturals *Just* Butternut Squash – Stage 1;
- Beech-Nut Organic *Just* Pumpkin – Stage 1;
- Beech-Nut Organic *Just* Apples – Stage 1;
- Beech-Nut Naturals Bananas – Stage 1;
- Beech-Nut Naturals Beets, Pear & Pomegranate – Stage 2;
- Beech-Nut Naturals Sweet Corn and Green Beans;
- Beech-Nut Naturals Carrots;
- Beech-Nut Naturals Green Beans;
- Beech-Nut Naturals Apple and Blackberries;
- Beech-Nut Naturals Pear;
- Beech-Nut Naturals Apple and Kale;
- Beech-Nut Naturals Pineapple, Pear, and Avocado;
- Beech-Nut Naturals Sweet Potato;
- Beech-Nut Naturals Apple;
- Beech-Nut Naturals Apple, Pumpkin, and Cinnamon;
- Beech-Nut Naturals Spinach, Zucchini, and Peas; and
- Beech-Nut Naturals Mango.

Beech-Nut markets under its "naturals" and "organics" in order to emphasize the foods suitability for consumption by young children and infants.

21.     Beech-Nut Baby Foods' packaging labels do not list, let alone warn, potential customers that the Beech-Nut Baby Foods contain toxic heavy metals.

## II.     HEAVY METAL NEUROTOXINS & THEIR EFFECT ON CHILD DEVELOPMENT

22.     Baby food producers promote their product testing and safety procedures because parents and caretakers pay attention to what ingredients are in the baby food they purchase for their children. This is because adults do not want to expose their children to substances and/or chemicals that would either harm the child or inhibit the child's development.

23.     One example of harmful substances parents want to avoid exposing their children to are the heavy metals arsenic, lead, mercury, and cadmium. These heavy metals are a type of substance known as neurotoxins, or substances that "alter[] the structure of function of the nervous system."[6] Exposure to these neurotoxins have been shown to "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies."[7]

24.     Research continuously shows that exposure to food containing these heavy metals causes "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[8] Specifically, the heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral

---

[6] https://www.britannica.com/science/neurotoxin

[7] Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, 13, Healthy Babies Bright Futures (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (accessed Feb. 22, 2021) (hereinafter "Healthy Babies Bright Futures Report").

[8] Healthy Babies Bright Futures Report, at 1.

problems like attention-deficit hyperactivity disorder (ADHD)."[9] These developmental conditions can be caused by exposure to even trace amounts of these substances.[10]

25.     For these reasons, organizations such as the Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[11] Further, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals.[12]

### A.     Arsenic

26.     The heavy metal arsenic has been shown to cause "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[13] The effects of arsenic exposure are irreversible and in addition to the cognitive and neurological effects it has on child development, arsenic also creates a risk of "respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system[.]"[14]

---

[9] Healthy Babies Bright Futures Report, at 6.

[10] Healthy Babies Bright Futures Report, at 1.

[11] *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury, Staff Report* (the "Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, at 2, February 4, 2021, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (accessed Feb. 4, 2021).

[12] Report, at 3.

[13] Healthy Babies Bright Futures Report, at 13.

[14] Report, at 10 (quoting Miguel Rodríguez-Barranco et al., *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioural Disorders in Children: A*

27.     Arsenic's harmful effects have caused both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") to set standards limiting the allowable amount of arsenic in products meant for human consumption. For example, the FDA has set a limit of 10 parts per billion ("PPB") for apple juice, and the EPA has set the same limit for drinking water. Additionally, the FDA has set a limit of 10 parts per billion for bottled water[15] and is considering limiting the action level for arsenic in rice cereals for infants to 100 ppb.[16] The FDA has taken action against companies whose products contain arsenic levels exceeding this limit.[17]

**B.     Lead**

28.     Exposure to the heavy metal lead has been shown to cause harm to children's brain and nervous systems and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth."[18] Even very low exposure levels to lead "cause[s] lower academic achievement, attention deficits and behavior problems. No safe level of exposure has been identified."[19]

---

*Systematic Review and Meta-Analysis* (June 1, 2013), https://pubmed.ncbi.nlm.nih.gov/23570911/) (accessed Feb. 23, 2021).

[15] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (accessed Feb. 22, 2021).

[16] FDA, *Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level* (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/UCM493152.pdf (accessed Feb. 22, 2021).

[17] *See, e.g. Warning Letter from FDA to Valley Processing, Inc. (June 2, 2016), https://www.fda.gov/iceci/enforcementactions/warningletters /2016/ucm506526.htm.*

[18] Report, at 11.

[19] Healthy Babies Bright Futures Report, at 13.

29.     For example, one study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food."[20] Additionally, studies have established a link between lead exposure and Attention-Deficit/Hyperactivity Disorder (ADHD).[21]

30.     The proven negative effects of lead exposure have caused several health organizations—including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer Reports—to recommend that lead in baby foods not exceed 1 ppb[22] and "[t]he European Union has set the maximum lead level in infant formula to 20 ppb."[23]

### C.     Mercury

31.     The World Health Organization warns that mercury "may have toxic effects on the nervous, digestive and immune systems, and on lungs, kidneys, skin and eyes" and considered mercury "one of the top ten chemicals or groups of chemicals of major public health concern."[24]

32.     It has been recognized that "[y]oung and unborn children are at greatest risk from mercury exposure because their nervous systems are still developing"[25] and that exposure to

---

[20] Healthy Babies Bright Futures Report, at 13.

[21] Report, at 12 (citing Gabriele Donzelli *et al.*, *The Association Between Lead and Attention-Deficit/Hyperactivity Disorder: A Systematic Review* (Jan. 29, 2019), http://www.mdpi.com/1660-4601/16/3/382/htm).

[22] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Feb. 22, 2021).

[23] *Id.*

[24] *Id*.

[25] Missouri Dept. of Nat. Resources, *Mercury Can Affect Human Health*, https://dnr.mo.gov/env/mercury/mercury-impact.htm#:~:text=Mercury%20Can%20Affect%20Human%20Health,and%20developmental%

even a small amount of the heavy metal mercury can cause "serious health problems, and is a threat to the development of the child [] early in life."[26]  For example, exposure to even low doses of mercury "may delay a child's walking and talking, shorten attention span and cause learning disabilities."[27]

33.    Exposure to mercury has also been linked to higher risk of lower IQ scores and intellectual disability in children[28] and mercury exposure at two and three years of age has been positively associated with autistic behaviors among pre-school age children.[29]

34.    The EPA has set a maximum mercury level in drinking water to 2 ppb.[30]

**D.    Cadmium**

35.    The heavy metal cadmium is considered a neurotoxin. Eating food or drinking water with very high cadmium levels severely irritates the stomach, leading to vomiting and diarrhea, and sometimes death. Eating lower levels of cadmium over a long period can lead to kidney damage, and can cause bones to become fragile and break easily. Exposure to cadmium in air has caused lung cancer, and perhaps prostate cancer, in workers. The US Department of

---

20disorders%20in%20humans.&text=In%20low%20doses%2C%20mercury%20may,with%20fe rtility%20and%20blood%20pressure (accessed Feb. 22, 2021).

[26] *Mercury and health*, https://www.who.int/news-room/fact-sheets/detail/mercury-and-health#:~:text=Exposure%20to%20mercury%20%E2%80%93%20even%20small,%2C%20kidn eys%2C%20skin%20and%20eyes (accessed Feb. 24, 2021).

[27] Missouri Dept. of Nat. Resources, *Mercury Can Affect Human Health*, https://dnr.mo.gov/env/mercury/mercury-impact.htm#:~:text=Mercury%20Can%20Affect%20Human%20Health,and%20developmental% 20disorders%20in%20humans.&text=In%20low%20doses%2C%20mercury%20may,with%20fe rtility%20and%20blood%20pressure\ (accessed Feb. 22, 2021).

[28] Healthy Babies Bright Futures Report, at 14.

[29] Report, at 12-3.

[30] Report, at 32.

Health and Human Services ("HHS") and the EPA, both consider cadmium and cadmium compounds human carcinogens (can cause cancer).[31]

36.    Children with higher cadmium levels are three times more likely to have learning disabilities and participate in special education, according to a new study led by Harvard University researchers.[32]

37.    The EPA has set a maximum cadmium level in drinking water to 5 ppb, the FDA has set a maximum level in bottled water to 5 ppb, and the WHO set a maximum cadmium level in drinking water to 3 ppb.[33]

## SUBSTANTIVE ALLEGATIONS

38.    On November 6, 2019, in response to reports alleging high levels of toxic heavy metals in baby foods, the United States House of Representatives Committee on Oversight and Reform Subcommittee on Economic and Consumer Policy (the "Subcommittee") requested internal documents and test results from several of the United States' largest producers of baby foods, including Defendant Beech-Nut.

39.    On February 4, 2020, the Subcommittee published a report entitled "Baby Foods Are Tainted With Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury" (the "Report") containing the results of the Subcommittee's investigation.

---

[31] NYS Dept. of Health, *Cadmium in Children's Jewelry*, https://www.health.ny.gov/environmental/chemicals/cadmium/cadmium_jewelry.htm#:~:text=C hildren%20can%20be%20exposed%20to,to%20cadmium%20in%20children's%20jewelry (accessed Feb. 22, 2021).

[32] Marla Cone, *Is Cadmium as Dangerous for Children as Lead?*, SCIENTIFIC AMERICAN (Feb. 10, 2012), https://www.scientificamerican.com/article/is-cadmium-as-dangerous-for-children-lead/ (accessed Feb. 22, 2021).

[33] Report, at 29.

## I.   BEECH-NUT KNOWINGLY SOLD BABY FOODS WITH UNSAFE LEVELS OF TOXIC HEAVY METALS TO UNITED STATES CONSUMERS

40.    The Subcommittee's Report contained findings that Beech-Nut knowingly sold baby foods to United States consumers that contained high levels of the toxic heavy metal's arsenic, lead, mercury, and cadmium. By knowingly selling baby foods with unsafe amounts of these toxic heavy metals to United States consumers, Beech-Nut knowingly exposed millions of children to substances proven to cause permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior.[34]

41.    The Report found that Beech-Nut only tested individual ingredients, and not its final product(s). According to the Subcommittee, this policy "recklessly endangers babies and children and prevents [Beech-Nut] from ever knowing the full extent of the danger presented by [Beech-Nut's] products."[35]

42.    The Report also made specific findings regarding the presence of toxic heavy metals in baby foods produced by Defendant Beech-Nut. These findings include the following:

- Beech-Nut used ingredients after they tested as high as 913.4 ppb arsenic. Beech-Nut routinely used high-arsenic additives that tested over 300 ppb arsenic to address product characteristics such as "crumb softness."[36]

- Beech-Nut used ingredients containing as much as 886.9 ppb lead. It used many ingredients with high lead content, including 483 that contained

---

[34] Report, at 2.

[35] Report, at 56-7.

[36] Report, at 3.

over 5 ppb lead, 89 that contained over 15 ppb lead, and 57 that contained over 20 ppb lead.[37]

- Beech-Nut used 105 ingredients that tested over 20 ppb cadmium. Some tested much higher, up to 344.55 ppb cadmium.[38]

- Beech-Nut [does] not even test for mercury in baby food.[39]

43.     The Report also found established unreasonably high internal guidelines governing the presence of toxic heavy metals in its baby food ingredients, which caused its finished baby foods to contain unreasonably high levels of toxic heavy metals. For example, the Report found that Beech-Nut "set an internal specification limit . . . of 3,000 ppb inorganic arsenic for certain ingredients, including vitamin mix" and that as a result, Beech-Nut used ingredients in its baby foods containing 710.9, 465.2, and 401.4 ppb arsenic.[40] These levels far exceed the limits of 10 ppb inorganic arsenic set forth by the FDA for bottled water and apple juice, and the 10 ppb limit set forth by the EPA for drinking water and were the highest of any manufacturer that responded to the Subcommittee's requests.

44.     Additionally, the Report found that Beech-Nut set internal guidelines of 3,000 ppb for cadmium and 5,000 ppb for lead for certain ingredients which, like Beech-Nut's guidelines for arsenic, "far surpass any existing regulatory standard in existence and toxic heavy metal levels for any other baby food manufacturer that responded to the Subcommittee's inquiry."[41]

---

[37] Report, at 3.

[38] Report, at 3.

[39] Report, at 4.

[40] Report, at 37.

[41] Report, at 38.

45.     The Report also found that in addition to permitting dangerously high levels of

toxic heavy metals, Beech-Nut has often sold foods that *exceeded* its own already-egregiously

high internal standards. For example, the Subcommittee's Report found that "Beech-Nut sold

eleven products that surpassed its own internal cadmium limits" and that "[b]y doing so, Beech-

Nut accepted dehydrated potato containing 119.6, 143.5, and 148.4 ppb cadmium, far surpassing

its own internal limit of 90 ppb for that ingredient.[42]

## II.    DEFENDANT BEECH-NUT FALSELY, MISLEADINGLY, AND/OR DECEPTIVELY CLAIMED ITS FOOD WAS FIT FOR CHILD CONSUMPTION

46.     Baby food manufacturers hold a special position of public trust. Consumers

believe that they would not sell unsafe products. Consumers also believe that the federal

government would not knowingly permit the sale of unsafe baby food. Defendant Beech-Nut

took advantage of its position.

47.     Beech-Nut advertised its products as safe, healthy, nutritious, natural, organic,

and safe for consumption. By doing so, Beech-Nut had a duty to ensure that its statements

regarding its products were true and not false, misleading, or deceptive, yet continued to make

false, misleading, and deceptive statements regarding the safety of its baby foods despite

knowledge that its baby foods contained unsafe levels of heavy metals.

48.     Beech-Nut violated this duty by marketing and advertising its baby foods through

statements regarding the safety of its baby foods despite knowing that its baby foods contained

dangerous levels of heavy metals.

49.     As a result of Beech-Nut's false, misleading, and deceptive statements, Plaintiffs

and members of the Class and Subclasses bought Beech-Nut Baby Foods they would not have

---

[42] Report, at 38.

otherwise bought, and paid more for Beech-Nut Baby Foods than they would have paid had it

been fully disclosed that Beech-Nut Baby Foods contained dangerous levels of heavy metals.

## III.   DEFENDANT BEECH-NUT FAILED TO WARN UNITED STATES CONSUMERS THAT ITS BABY FOODS CONTAINED DANGEROUS LEVELS OF HEAVY METALS

50.     Beech-Nut knew or should have been aware that a consumer would be feeding its

products to children, often making its products the primary source of food for a child. This leads

to repeated exposure of the heavy metals to the child.

51.     Beech-Nut thus wrongfully and misleadingly advertised and sold the Beech-Nut

Baby Foods without any label or warning indicating to consumers that these products contain

heavy metals, or that these toxins can over time accumulate in the baby's body to the point where

poisoning, injury, and/or disease can occur. Beech-Nut intentionally omitted these facts from its

marketing, advertising and labeling in order to induce and mislead reasonable consumers into

purchasing Beech-Nut Baby Foods.

## IV.   PLAINTIFF JEREMY CANTOR

52.     Plaintiff Jeremy Cantor is a resident of Colorado.

53.     Plaintiff Cantor has purchased several types of the Beech-Nut Baby Foods which,

according to the Report, were tainted with unsafe levels of heavy metals during the Class Period.

Plaintiff Cantor made these purchase at the King Sooper's grocery store located in Golden,

Colorado.

54.     Plaintiff Cantor's relevant purchases include, but are not limited to:

- Beech-Nut Naturals Sweet Potato Stage 1 Baby Food—a product with an

    ingredient (sweet potato) that tested as having excessive levels of lead—

    purchased on June 29, 2020, July 25, 2020, October 17, 2020, November

13, 2020, December 2, 2020, December 10, 2020, December 28, 2020, January 12, 2021, and January 26, 2021.

- Beech-Nut Naturals Apple Pumpkin & Cinnamon Stage 2 Baby Food—a product with an ingredient (cinnamon) that tested as having excessive levels of lead, arsenic, and cadmium and another ingredient (lemon used for lemon juice concentrate) that tested for excessive levels of lead— purchased on July 25, 2020, September 3, 2020, December 10, 2020, January 12, 2021

- Beech-Nut Naturals Apple Cinnamon & Granola Stage 2 Baby Food—a product with an ingredient (cinnamon) that tested as having excessive levels of lead, arsenic, and cadmium and another ingredient (lemon used for lemon juice concentrate) that tested for excessive levels of lead— purchased on October, 17, 2020, January 4, 2021, and January 26, 2021

- Beech-Nut Naturals Banana Orange & Pineapple Stage 2 Baby Food—a product with an ingredient (lemon used for lemon juice concentrate) that tested as having excessive levels of lead—purchased on October 17, 2020, December 2, 2020, December 10, 2020, January 12, 2021, and January 26, 2021.

- Beech-Nut Naturals Pear & Blueberries Stage 2 Baby Food—a product with an ingredient (blueberries) that tested as having excessive levels of lead—purchased on October 17, 2020, November 13, 2020, December 2, 2020, December 20, 2020, and January 26, 2021.

- Beech-Nut Organics Banana Cinnamon & Granola Stage 2 Baby Food—a product with an ingredient (organic cinnamon) that tested for excessive levels of lead and cadmium—purchased on December 2, 2020.

- Beech-Nut Sweet Carrots Stage 2 Baby Food—a product with an ingredient (carrots) that tested as having excessive levels of lead—on January 12, 2021 and January 26, 2021.

55. Plaintiff Cantor would not have made these purchased or would not have paid as much for these products had he known that the Beech-Nut Baby Foods contained dangerous levels of heavy metal toxins.

**V.  PLAINTIFF ASHLEY ALLEN**

56. Plaintiff Allen is a resident of Michigan.

57. Plaintiff Allen purchased several types of Beech-Nut Baby Foods, including oatmeal and purees from December 2020 through January 2021. Plaintiff Allen made these purchases at the Meijer supermarket located in Ludington, Michigan.

58. Plaintiff Allen would not have made these purchases or would not have paid as much for these products had he known that the Beech-Nut Baby Foods contained dangerous levels of heavy metal toxins.

**VI.  PLAINTIFF DOMINICK GROSSI**

59. Plaintiff Grossi is a resident of Pennsylvania.

60. Plaintiff Grossi purchased several types of Beech-Nut Baby Foods in 2016 and 2017. Plaintiff Grossi made these purchases at the Walmart stores in Latrobe and Greensburg, Pennsylvania, as well as the Giant Eagle grocery store in Latrobe, Pennsylvania.

61.     Plaintiff Grossi would not have made these purchases or would not have paid as much for these products had he known that the Beech-Nut Baby Foods contained dangerous levels of heavy metal toxins.

## VII.   PLAINTIFF ANTHONY HARRISON

62.     Plaintiff Harrison is a resident of Missouri.

63.     Plaintiff Harrison purchased several types of Beech-Nut Baby Foods in 2017 and 2018. Plaintiff Harrison made these purchases at the Walmart store in Kirksville, Missouri.

64.     Plaintiff Harrison would not have made these purchases or would not have paid as much for these products had he known that the Beech-Nut Baby Foods contained dangerous levels of heavy metal toxins.

## VIII.   PLAINTIFF HEATHER HYDEN

65.     Plaintiff Hyden is a resident of Texas.

66.     Plaintiff Hyden purchased several types of Beech-Nut Baby Foods from September 2020 through the present. Plaintiff Hyden made these purchases at the Walmart store in Marble Falls, Texas, and the H-E-B in Burnet, Texas.

67.     Plaintiff Hyden would not have made these purchases or would not have paid as much for these products had he known that the Beech-Nut Baby Foods contained dangerous levels of heavy metal toxins.

## IX.   PLAINTIFF HALEY SAMS

68.     Plaintiff Sams is a resident of Georgia.

69.     Plaintiff Sams purchased several types of Beech-Nut Baby Foods from July 2019 through January 2021. Plaintiff Sams made these purchases at the Walmart store located in Rockmart, Georgia.

70.     Plaintiff Sams would not have made these purchases or would not have paid as much for these products had he known that the Beech-Nut Baby Foods contained dangerous levels of heavy metal toxins

## X.     PLAINTIFF VITO SCAROLA

71.     Plaintiff Vito Scarola is a resident of Florida.

72.     Plaintiff Scarola purchased several types of Beech-Nut Baby Foods from October 2016 through December 2018. Plaintiff Scarola made these purchases at grocery stores in an around Orlando, Florida.

73.     Plaintiff Scarola would not have made these purchased or would not have paid as much for these products had he known that the Beech-Nut Baby Foods contained dangerous levels of heavy metal toxins.

## TOLLING AND ESTOPPEL

## I.     DISCOVERY RULE TOLLING

74.     Plaintiffs and the Classes and Subclasses had no way of knowing about Defendant Beech-Nut's conduct with respect to the presence of toxic heavy metals.

75.     Neither Plaintiffs nor any other members of the Class or Subclasses, through the exercise of reasonable diligence, could have discovered the conduct alleged herein. Further, Plaintiffs and members of the Class and Subclasses did not discover and did not know of facts that would have caused a reasonable person to suspect that Beech-Nut was engaged in the conduct alleged herein.

76.     For these, reasons, all applicable statutes of limitation have been tolled by discovery rule with respect to claims asserted by Plaintiffs, the Classes, and the Subclasses.

## II.    FRAUDULENT CONCEALMENT TOLLING

77.    By failing to provide notice of the presence of toxic heavy metals in the Beech-Nut Baby Foods, Defendant Beech-Nut concealed its conduct and the existence of the claims asserted herein from Plaintiffs and the members of the Class and Subclasses.

78.    Upon information and belief, Defendant Beech-Nut intended its acts to conceal the facts and claims from Plaintiff and members of the Classes and Subclasses. Plaintiffs and the members of the Classes and Subclasses were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant Beech-Nut's conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or members of the Classes or Subclasses should be tolled.

## CLASS ACTION ALLEGATIONS

79.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

80.    Plaintiffs seek class certification on behalf of a class defined as follows:

**NATIONWIDE CLASS:** all persons in the United States who, from the beginning of any applicable limitations period through the present, purchased the Beech-Nut Baby Foods for household or business use, and not for resale (the "Class").

81.    Plaintiff Cantor seeks certification on behalf of a Colorado Subclass:

**THE COLORADO SUBCLASS:** all persons who are or were citizens of the State of Colorado who, from the beginning of any applicable limitations period through the present, purchased the Beech-Nut Baby Foods for household or business use, and not for resale (the "Colorado Subclass").

82.    Plaintiff Scarola seeks certification on behalf of a Florida Subclass:

**THE FLORIDA SUBCLASS:** all persons who are or were citizens of the State of Florida who, from the beginning of any applicable limitations period through the present, purchased the Beech-Nut Baby Foods for household or business use, and not for resale (the "Florida Subclass").

83.     Plaintiff Sams seeks certification on behalf of a Georgia Subclass:

**THE GEORGIA SUBCLASS**: all persons who are or were citizens of the State of Georgia who, from the beginning of any applicable limitations period through the present, purchased the Beech-Nut Baby Foods for household or business use, and not for resale (the "Georgia Subclass").

84.     Plaintiff Allen seeks certification on behalf of a Michigan Subclass:

**THE MICHIGAN SUBCLASS**: all persons who are or were citizens of the State of Michigan who, from the beginning of any applicable limitations period through the present, purchased the Beech-Nut Baby Foods for household or business use, and not for resale (the "Michigan Subclass").

85.     Plaintiff Harrison seeks certification on behalf of a Missouri Subclass:

**THE MISSOURI SUBCLASS**: all persons who are or were citizens of the State of Missouri who, from the beginning of any applicable limitations period through the present, purchased the Beech-Nut Baby Foods for household or business use, and not for resale (the "Missouri Subclass").

86.     Plaintiff Grossi seeks certification on behalf of a Pennsylvania Subclass:

**THE PENNSYLVANIA SUBCLASS**: all persons who are or were citizens of the Commonwealth of Pennsylvania who, from the beginning of any applicable limitations period through the present, purchased the Beech-Nut Baby Foods for household or business use, and not for resale (the "Pennsylvania Subclass").

87.     Plaintiff Hyden seeks certification on behalf of a Texas Subclass:

**THE TEXAS SUBCLASS**: all persons who are or were citizens of the State of Texas who, from the beginning of any applicable limitations period through the present, purchased the Beech-Nut Baby Foods for household or business use, and not for resale (the "Texas Subclass").

88.     Plaintiffs reserve the right to modify or refine the definitions of the Class or

Subclasses based upon discovery of new information and in order to accommodate any of the

Court's manageability concerns.

89.     Excluded from the Class and Subclasses are: (a) any Judge or Magistrate Judge

presiding over this action and members of their staff, as well as members of their families; (b)

Defendant and Defendant's predecessors, parents, successors, heirs, assigns, subsidiaries, and

any entity in which any Defendant or its parents have a controlling interest, as well as

Defendant's current or former employees, agents, officers, and directors; (c) persons who

properly execute and file a timely request for exclusion from the Classes or Subclass; (d) persons

whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e)

counsel for Plaintiffs and Defendant; and (f) the legal representatives, successors, and assigns of

any such excluded persons.

90.     **Ascertainability**. The proposed Classes and Subclasses are readily ascertainable

because they are defined using objective criteria so as to allow class members to determine if

they are part of a Class or Subclass. Further, the Classes and Subclasses can be readily identified

through records maintained by Defendant Beech-Nut.

91.     **Numerosity (Rule 23(a)(1))**. The Classes and Subclasses are so numerous that

joinder of individual members herein is impracticable. The exact number of members of the

Class and Subclasses, as herein identified and described, is not known, but sales figures indicate

that millions of individuals have purchased the Beech-Nut Baby Foods.

92.     **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each

cause of action and predominate over questions affecting only individual Class and Subclass

members, including the following:

- whether Defendant owed a duty of care to Plaintiffs and the Classes;

- whether Defendant knew or should have known that the Beech-Nut Baby Foods contained, or may contain, heavy metals;

- whether Defendant wrongfully represented and continues to represent that the Beech-Nut Baby Foods are natural and safe for human infant consumption;

- whether Defendant wrongfully represented and continues to represent that the Beech-Nut Baby Foods are healthy, superior quality, nutritious and safe for consumption;

- whether Defendant wrongfully represented and continues to represent that the Beech-Nut Baby Foods are natural;

- whether Defendant wrongfully represented and continues to represent that the Beech-Nut Baby Foods appropriate for consumption by various "Stage[s]" of babies;

- whether Defendant wrongfully represented and continues to represent that the manufacturing of the Beech-Nut Baby Foods is subjected to rigorous standards, including testing for heavy metals;

- whether Defendant wrongfully failed to disclose that the Beech-Nut Baby Foods contained, or may contain, heavy metals;

- whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

- whether those representations are likely to deceive a reasonable consumer;

- whether a reasonable consumer would consider the presence, or risk of, heavy metals as a material fact in purchasing baby food;

- whether Defendant had knowledge that those representations were false, deceptive, and misleading;

- whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

- whether a representation that a product is healthy, superior quality, nutritious and safe for consumption and does not contain arsenic, mercury, cadmium, and lead is material to a reasonable consumer;

- whether Defendant's representations and descriptions on the labeling of the Beech-Nut Baby Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

- whether Defendant violated the laws of the State of Colorado;

- whether Defendant breached its express warranties;

- whether Defendant breached its implied warranties;

- whether Defendant engaged in unfair trade practices;

- whether Defendant engaged in false advertising;

- whether Defendant's conduct was negligent *per se*;

- whether Defendant made negligent and/or fraudulent misrepresentations and/or omissions;

- whether Plaintiffs and the members of the Class are entitled to actual, statutory, and punitive damages; and

- whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief.

93.    **Typicality (Rule 23(a)(3))**. Plaintiffs' claims are typical of the claims of the other members of the proposed Class and Subclasses. Plaintiffs and members of the Class and Subclasses (as applicable) suffered injuries as a result of Defendant Beech-Nut's wrongful conduct that is uniform across the Class and Subclasses.

94.    **Adequacy (Rule 23(a)(4))**. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class and Subclasses. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Class and Subclasses, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclasses, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class and Subclasses.

95.    **Substantial Benefits**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class and Subclasses is impracticable. The prosecution of separate actions by individual members of the Class and Subclasses would impose heavy burdens upon the Courts and Defendant, would create a risk of inconsistent or varying

adjudications of the questions of law and fact common to members of the Classes and Subclasses, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

96.     Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

97.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Classes and Subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class and Subclasses as a whole.

98.     Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## BREACH OF EXPRESS WARRANTY

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

99.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

100.     Defendant Beech-Nut marketed and sold the Beech-Nut Baby Foods into the stream of commerce with the intent that the Beech-Nut Baby Foods would be purchased by Plaintiffs and the Class.

101.     Defendant expressly warranted, advertised, and represented to Plaintiffs and the Class that its Beech-Nut Baby Foods were and are safe, healthy, and appropriate for infant and child consumption.

102.     Defendant made these express warranties regarding the Beech-Nut Baby Foods' quality, ingredients, and fitness for consumption in writing through its website, advertisements, and marketing materials and on the Beech-Nut Baby Foods' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and the Class entered into upon purchasing the Beech-Nut Baby Foods.

103.     Defendant's advertisements, warranties, and representations were made in connection with the sale of the Beech-Nut Baby Foods to Plaintiffs and the Class. Plaintiffs and the Class relied on Defendant's advertisements, warranties, and representations regarding the Beech-Nut Baby Foods in deciding whether to purchase Defendant's products.

104.     Defendant's Beech-Nut Baby Foods do not conform to Defendant's advertisements, warranties and representations in that they are not safe, healthy, and appropriate for infant and child consumption; and contain, or may contain, levels of various heavy metals.

105.     Defendant therefore breaches the express warranties by placing Beech-Nut Baby Food into the stream of commerce and selling them to consumers, when they have dangerous and/or toxic levels of heavy metals, and can cause toxicity and adverse health implication, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Defendant Beech-Nut. These high levels of heavy metals substantially impair the use, value, safety of Beech-Nut Baby Foods.

106.     Defendant Beech-Nut was at all times aware, or should have been aware, of the toxic or dangerous levels of heavy metals in Beech-Nut Baby Foods. Defendant Beech-Nut was on notice of these concerns with their products, but nowhere on the package labeling or on Defendant Beech-Nut's website or other marketing materials did Defendant Beech-Nut warn Plaintiffs and members of the Class and Subclasses that they were at risk of feeding their children food and/or beverages with toxic or dangerous levels of heavy metals.

107.     Instead, Defendant Beech-Nut concealed the high levels of heavy metals contained in the Beech-Nut Baby Foods and deceptively represented that these products were safe, healthy, and appropriate for infant or child consumption. Defendant Beech-Nut thus utterly failed to ensure that the material representations it was making to consumers were true.

108.     The toxic and/or dangerous levels of heavy metals at issue in the Beech-Nut Baby Foods existed when they left Defendant's possession or control and were sold to Plaintiffs and members of the putative classes. The levels of heavy metals contained in the Beech-Nut Baby

Foods were undiscoverable by Plaintiffs and members of the putative classes at the time of purchase of the Beech-Nut Baby Foods.

109.    As manufacturers, marketers, advertisers, distributors and sellers of the Beech-Nut Baby Foods, Defendant Beech-Nut had exclusive knowledge and notice of the fact that the Beech-Nut Baby Foods did not conform to the affirmations of fact and promises.

110.    In addition, or in the alternative, to the formation of an express contract, Defendant made each of the above-described representations to induce Plaintiffs and members of the Class and Subclasses to rely on such representations.

111.    Defendant Beech-Nut's affirmations of fact and promises were material, and Plaintiffs and members of the putative classes reasonably relied upon such representations in purchasing the Beech-Nut Baby Foods.

112.    All conditions precedent to Defendant's liability for its breach of express warranty have been performed by Plaintiffs or members of the Class or Subclasses.

113.    Affording Defendant Beech-Nut an opportunity to cure its breaches of written warranties would be unnecessary and futile here. Defendant Beech-Nut were placed on reasonable notice of the levels of heavy metals in the Beech-Nut Baby Foods and breach of the warranties based their scientific research and expertise in the food production industry. Defendant Beech-Nut has had ample opportunity to cure the high level of heavy metal in their Beech-Nut Baby Foods to make them safe and healthy for consumption by Plaintiffs and members of the putative classes and their children, but have failed to do so.

114.    Defendant Beech-Nut has also had notice of their breach as set forth herein by virtue of the publication of the Report the prior 2019 report issued by Healthy Baby Bright Future.

115.     As a direct and proximate result of Defendant Beech-Nut's breaches of express warranty, Plaintiffs and members of the putative classes have been damaged because they did not receive the products as specifically warranted by Defendant Beech-Nut. Plaintiffs and members of the putative classes did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment of the Beech-Nut Baby Foods.

116.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

## SECOND CLAIM FOR RELIEF

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

117.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

118.     Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Class.

119.     There was a sale of goods from Defendant to Plaintiffs and the Class.

120.     At all times mentioned herein, Defendant manufactured or supplied Beech-Nut Baby Foods, and prior to the time the Beech-Nut Baby Foods were purchased by Plaintiffs and the Class, Defendant impliedly warranted to them that the Beech-Nut Baby Foods were of merchantable quality, fit for their ordinary use (consumption by babies), and conformed to the promises and affirmations of fact made on the Beech-Nut Baby Foods' containers and labels, including that the food was natural and safe and appropriate for human infant consumption. Plaintiffs and the Class relied on Defendant's promises and affirmations of fact when they purchased the Beech-Nut Baby Foods.

121.    Contrary to these representations and warranties, the Beech-Nut Baby Foods were not fit for their ordinary use, consumption by babies, and did not conform to Defendant's affirmations of fact and promises as they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

122.    Defendant breached its implied warranties by selling Beech-Nut Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

123.    Defendant was on notice of this breach, as it was aware of the heavy metals included, or at risk, in the Beech-Nut Baby Foods, and based on the public investigation by Healthy Babies Bright Futures that showed Defendant's baby food products as unhealthy and contaminated.

124.    Privity exists because Defendant impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that Beech-Nut Baby Foods were natural, and suitable for consumption by babies, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

125.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Beech-Nut Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals and/or unnatural or other ingredients.

126.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

## THIRD CLAIM FOR RELIEF

### FRAUDULENT MISREPRESENTATION

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

127.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

128.     Defendant falsely represented to Plaintiffs and the Class that the Beech-Nut Baby Foods are "natural", "organic" and safe for consumption by infants and young children.

129.     Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class to purchase Beech-Nut Baby Foods.

130.     Defendant knew that their representations about Beech-Nut Baby Foods were false in that Beech-Nut Baby Foods contained, or were at risk of containing, levels of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements. Defendant allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class.

131.     Plaintiffs and the Class did in fact rely on these misrepresentations and purchased Beech-Nut Baby Foods to their detriment. Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted Beech-Nut Baby Foods, Plaintiffs' and the Class's reliance on Defendant's misrepresentations was justifiable.

132.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Beech-Nut Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk

and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

133.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FOURTH CLAIM FOR RELIEF

### FRAUD BY OMISSION

**(on behalf of Nationwide Class or, alternatively, the State Subclasses)**

134.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

135.    Defendant concealed from and failed to disclose to Plaintiffs and the Class that Beech-Nut Baby Foods contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

136.    Defendant was under a duty to disclose to Plaintiffs and the Class the true quality, characteristics, ingredients and suitability of the Beech-Nut Baby Foods because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of Beech-Nut Baby Foods for consumption by babies; and (3) Defendant knew that Plaintiffs and the Class could not reasonably have been expected to learn or discover that Beech-Nut Baby Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing Beech-Nut Baby Foods.

137.    The facts concealed or not disclosed by Defendant to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase Beech-Nut Baby Foods.

138.    Plaintiffs and the Class justifiably relied on the Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of Beech-Nut Baby Foods, which is inferior when compared to how Beech-Nut Baby Foods are advertised and represented by Defendant.

139.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Beech-Nut Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

140.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FIFTH CLAIM FOR RELIEF

## NEGLIGENT MISREPRESENTATION

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

141.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

142.    Defendant had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacture, marketing, distribution, and sale of Beech-Nut Baby Foods.

143.    Defendant breached its duty to Plaintiffs and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendant and by failing to promptly remove Beech-Nut Baby Foods from the marketplace or to take other appropriate remedial action.

144.    Defendant knew or should have known that the ingredients, qualities, and characteristics of the Beech-Nut Baby Foods were not as advertised or suitable for their intended use, consumption by infants, and were otherwise not as warranted and represented by Defendant. Specifically, Defendant knew or should have known that: (1) the Beech-Nut Baby Foods were not nutritious, superior quality, pure, natural, healthy and safe for consumption because they contained, or had a risk of containing, levels of heavy metals and/or other unnatural ingredients or contaminants that do not conform to the packaging; (3) the Beech-Nut Baby Foods were adulterated, or at risk of being adulterated, by heavy metals; and (4) the Beech-Nut Baby Foods were otherwise not as warranted and represented by Defendant.

145.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Beech-Nut Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

146.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## SIXTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

147.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

148.    Substantial benefits have been conferred on Defendant by Plaintiffs and the Class through the purchase of Beech-Nut Baby Foods. Defendant knowingly and willingly accepted and enjoyed these benefits.

149.    Defendant either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the Beech-Nut Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

150.    Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the Class.

151.    Plaintiffs and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

152.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**SEVENTH CLAIM FOR RELIEF**

**COLORADO CONSUMER PROTETION ACT**

**Colo. Rev. Stat. §§ 6-1-101, *et seq*.**

**(Brought on Behalf of Plaintiff Cantor and the Colorado Subclass)**

153.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

154.     Defendant is a "person" as defined by C.R.S. § 6-1-102(6);

155.     Plaintiff Cantor is an actual or potential consumer of Beech-Nut Baby Food.

156.     Beech-Nut engaged in engaged in deceptive, unfair, and unlawful trade acts or practices in the course of their business, vocation, or occupation, in violation of C.R.S. § 6-1-105, including but not limited to the following:

(a)     Knowingly or recklessly made a false representation as to the characteristics and use Beech-Nut Baby Foods, in violation of C.R.S. §6-1-105(e);

(b)     Represented that Beech-Nut Baby Foods are healthy, natural, and safe for consumption, in violation of C.R.S. §6-1-105(g);

(c)     Advertised Beech-Nut Baby Foods with an intent not to sell it as advertised, in violation of C.R.S. §6-1-105(i); and

(d)     Failed to disclose the material information that Beech-Nut Baby Foods contained unsafe levels of toxic heavy metals, in violation of C.R.S. §6-1-105(u).

157.     As detailed, *infra,* Defendant Beech-Nut's deceptive trade practices significantly impacted the public, because there are millions of consumers of Beech-Nut Baby Foods, including Plaintiff Cantor, and Colorado Subclass Members.

158.    Defendant Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiffs and members of the Class suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

159.    Defendant Beech-Nut's deceptive trade practices caused injury in fact and actual damages Plaintiff Cantor and Colorado Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Plaintiff Cantor and Colorado Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Cantor and Colorado Subclass Members. The injuries of Plaintiff Cantor and Colorado Subclass Members were to legally protected interests. The gravity of the harm of Defendant Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

160.    Plaintiff Cantor and Colorado Class Members seek relief under Colo. Rev. Stat. § 6-1-101, *et. seq.*, including, not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

## EIGHTH CLAIM FOR RELIEF

### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

### Fla. Stat. §§ 501.201 *et seq.*

### (Brought on Behalf of Plaintiff Scarola and on Behalf of the Florida Subclass)

161.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

162.   Plaintiff Scarola and the Florida Subclass Members are "consumers," as defined by Fla. Stat. § 501.203(7), the products sold by Defendant Beech-Nut are "goods" within the meaning of FDUTPA, and the transactions at issue constitute "trade or commerce" as defined by FDUTPA.

163.   The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204. provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

164.   For the reasons discussed herein, Defendant violated and continues to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Fla. Stat. § 501.201, *et seq*. Defendant Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

165.   At all times mentioned herein, Defendant Beech-Nut engaged in trade or commerce in Florida, as defined by Fla. Stat. § 501.203(8), in that they advertised, offered for sale, sold or distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

166.    Defendant Beech-Nut repeatedly advertised, both on the labels for Beech-Nut Baby Foods Products, on its websites, and through a national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe and healthy for infant and child consumption. Defendant Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained unsafe levels of toxic heavy metals.

167.    Defendant Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Scarola and Florida Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

168.    Defendant Beech-Nut's deceptive trade practices caused injury in fact and actual damages Plaintiff Scarola and Florida Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Plaintiff Scarola and Florida Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Scarola and Florida Subclass Members. The injuries Plaintiff Scarola and Florida Subclass Members were to legally protected interests. The gravity of the harm of Defendant Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

169.    Plaintiff Scarola and the Florida Subclass Members seek relief for the injuries they have suffered as a result of Defendant Beech-Nut's unfair and deceptive acts and practices, as provided by Fla. Stat. § 501.211 and applicable law.

## NINTH CLAIM FOR RELIEF

### GEORGIA FAIR BUSINESS PRACTICES ACT

### O.C.G.A. §§ 10-1-390 *et seq.*

### (Brought on Behalf of Plaintiff Sams and on behalf of the Georgia Subclass)

170.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

171.    Plaintiff Sams and Georgia Subclass Members are "consumers" within the meaning of O.C.G.A. § 10-1-392(6).

172.    Plaintiff Sams' and Georgia Subclass Members' purchases of Beech-Nut Baby Foods are "consumer transactions" within the meaning of O.C.G.A. § 10-1-392(10).

173.    At all times mentioned herein, Defendant Beech-Nut engaged in trade or commerce in Georgia, as defined by O.C.G.A. § 10-1-392(28), in that they advertised, distributed, offered for sale, sold or distributed goods or services in Georgia and/or engaged in trade or commerce directly or indirectly affecting the people of Georgia.

174.    The Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. § 10-1-393(a) provides that "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful."

175.    For the reasons discussed herein, Defendant violated and continues to violate the GFBPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by O.C.G.A. § 10-1-393 *et seq.* Defendant Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

176.     Defendant Beech-Nut repeatedly advertised, both on the labels for Beech-Nut Baby Foods Products, on its websites, and through a national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe and healthy for infant and child consumption. Defendant Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained unsafe levels of toxic heavy metals.

177.     Defendant Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Sams and Georgia Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

178.     Defendant Beech-Nut's deceptive trade practices caused injury in fact and actual damages Plaintiff Sams and Georgia Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Plaintiff Sams and Georgia Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Sams and Georgia Subclass Members. The injuries Plaintiff Sams and Georgia Subclass Members were to legally protected interests. The gravity of the harm of Defendant Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

179.     Plaintiff Sams and Georgia Subclass Members seek relief for the injuries they have suffered as a result of Defendant Beech-Nut's unfair and deceptive acts and practices, as provided by O.C.G.A § 10-1-399 and applicable law.

<u>**TENTH CLAIM FOR RELIEF**</u>

**MICHIGAN CONSUMER PROTECTION ACT**

**MCL §§ 445 *et seq.***

**(Brought on Behalf of Plaintiff Allen and on behalf of the Michigan Subclass)**

180.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

181.    Plaintiff Allen and Michigan Subclass members are residents of the State of Michigan.

182.    At all times mentioned herein, Defendant Beech-Nut engaged in "trade or commerce" in Michigan, as defined by MCL § 445.902(g), in that they provided goods, property, or services primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold goods or services.

183.    The Michigan Consumer Protection Act ("MCPA"), MCL § 445.903 provides that "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful[.]"

184.    For the reasons discussed herein, Defendant violated and continues to violate the MCPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by MCL § 445.903 *et seq.* Defendant Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

185.    Defendant Beech-Nut repeatedly advertised, both on the labels for Beech-Nut Baby Foods Products, on its websites, and through a national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe and healthy for infant and child

consumption. Defendant Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained unsafe levels of toxic heavy metals.

186.    Defendant Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Allen and Michigan Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

187.    Defendant Beech-Nut's deceptive trade practices caused injury in fact and actual damages Plaintiff Allen and Michigan Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Plaintiff Allen and Michigan Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Allen and Michigan Subclass Members. The injuries Plaintiff Allen and Michigan Subclass Members were to legally protected interests. The gravity of the harm of Defendant Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

188.    Plaintiff Allen and Michigan Subclass Members seek relief for the injuries they have suffered as a result of Defendant Beech-Nut's unfair and deceptive acts and practices, as provided by MCL § 445.911 and applicable law.

## ELEVENTH CLAIM FOR RELIEF

### MISSOURI MERCHANDISING PRACTICES ACT

### Mo. Rev. Stat. §§ 407 et seq.

**(Brought on Behalf of Plaintiff Harrison on Behalf of the Missouri Subclass)**

189.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

190.    Plaintiff Harrison and Missouri Subclass members are residents of the State of Missouri.

191.    At all times mentioned herein, Defendant Beech-Nut engaged in "trade" or "commerce" in Missouri, as defined by Mo. Rev. Stat. § 407.010(7), in that they advertised, offered for sale, and sold provided goods, property, or services primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold "services", "property", "article[s]", "commodit[ies]" or "thing[s] of value" in Missouri.

192.    Plaintiff Harrison and Missouri Subclass members purchased Beech-Nut Baby Foods "primarily for personal, family or household purposes." Mo. Rev. Stat. § 407.025(1).

193.    The Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020 provides that "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…in the state of Missouri, is declared to be an unlawful practice."

194.    For the reasons discussed herein, Defendant violated and continues to violate the MMPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Mo. Rev. Stat. § 407.020 *et seq.* Defendant Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and

mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

195.    Defendant Beech-Nut repeatedly advertised, both on the labels for Beech-Nut Baby Foods Products, on its websites, and through a national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe and healthy for infant and child consumption. Defendant Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained unsafe levels of toxic heavy metals.

196.    Defendant Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Harrison and Missouri Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

197.    Defendant Beech-Nut's deceptive trade practices caused injury in fact and actual damages Plaintiff Harrison and Missouri Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Plaintiff Harrison and Missouri Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Harrison and Missouri Subclass Members. The injuries Plaintiff Harrison and Missouri Subclass Members were to legally protected interests. The gravity of the harm of Defendant Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

198.     Plaintiff Harrison and Missouri Subclass Members seek relief for the injuries they have suffered as a result of Defendant Beech-Nut's unfair and deceptive acts and practices, as provided by Mo. Rev. Stat. § 407.025 and applicable law.

## TWELFTH CLAIM FOR RELIEF

### PENNSYLVANIA UNFAIR TRADE PRACTICES

### AND CONSUMER PROTECTION LAW

### 73 Pa. Cons. Stat. Ann. §§ 201-1 et seq.

**(Brought on Behalf of Plaintiff Grossi on Behalf of the Pennsylvania Subclass)**

199.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

200.     Plaintiff Grossi and Pennsylvania Subclass Members are residents of the Commonwealth of Pennsylvania.

201.     At all times mentioned herein, Defendant Beech-Nut engaged in "trade" or "commerce" in Pennsylvania, as defined by 73 Pa. Cons. Stat. Ann. § 201-2(3), in that they advertised, offered for sale, and sold provided goods, property, or services primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold "services", "property", "article[s]", "commodit[ies]" or "thing[s] of value" in Pennsylvania.

202.     Plaintiff Grossi and Pennsylvania Subclass members purchased Beech-Nut Baby Foods "primarily for personal, family or household purposes." 73 Pa. Const. Stat. Ann. § 201-9.2.

203.     Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTCPL"), 73 Pa. Cons. Stat. Ann. § 201-3 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . are hereby declared unlawful."

204.    For the reasons discussed herein, Defendant violated and continues to violate the UTCPL by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by UTCPL §§ 201-1 *et seq.* Defendant Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

205.    Defendant Beech-Nut repeatedly advertised, both on the labels for Beech-Nut Baby Foods Products, on its websites, and through a national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe and healthy for infant and child consumption. Defendant Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained unsafe levels of toxic heavy metals.

206.    Defendant Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Grossi and Pennsylvania Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

207.    Defendant Beech-Nut's deceptive trade practices caused injury in fact and actual damages Plaintiff Grossi and Pennsylvania Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Plaintiff Grossi and Pennsylvania Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Grossi and

Pennsylvania Subclass Members. The injuries Plaintiff Grossi and Pennsylvania Subclass Members were to legally protected interests. The gravity of the harm of Defendant Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct. Plaintiff Grossi and Pennsylvania Subclass Members seek relief for the injuries they have suffered as a result of Defendant Beech-Nut's unfair and deceptive acts and practices, as provided by 73 Pa. Cons. Stat. Ann. § 201-9.2 and applicable law.

<u>**THIRTEENTH CLAIM FOR RELIEF**</u>

**TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT**

**Tex. Bus. & Com. Code §§ 17.41 *et seq*.**

**(Brought on Behalf of Plaintiff Hyden on Behalf of the Texas Subclass)**

208.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

209.    Plaintiffs, the Class, and Subclasses intend to assert a claim under the Texas Deceptive Trade Practices Act ("TDTPA") against Defendant. Plaintiffs intend to provide Defendant written notice of the specific complaint and damages to Defendant in accordance with Tex. Bus. & Com. Code § 17.505. Subject to the response, if any, by Defendant within 60 days of the notice, Plaintiffs, on behalf of themselves and the Classes, shall amend the Complaint to include this Claim for Relief and demand all appropriate relief under the TDTPA.

210.    Plaintiff Hyden and Texas Subclass Members are residents of the State of Texas.

211.    At all material times herein, Defendant Beech-Nut engaged in "trade" or "commerce" in as defined by the Texas Deceptive Trade Practices and Consumer Protection Act ("TDTPA").

212.    The Texas Deceptive Trade Practices and Consumer Protection Act, ("TDTPA") , Tex. Bus. & Com. Code § 17.46, makes it unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

213.    For the reasons discussed herein, Defendant violated and continues to violate the TDTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by TDTPA §§ 17.41 *et seq*. Defendant Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

214.    Defendant Beech-Nut repeatedly advertised, both on the labels for Beech-Nut Baby Foods Products, on its websites, and through a national advertising campaigns, among other items, that Beech-Nut Baby Foods were and are safe and healthy for infant and child consumption. Defendant Beech-Nut failed to disclose the material information that Beech-Nut Baby Foods contained unsafe levels of toxic heavy metals.

215.    Defendant Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Beech-Nut Baby Foods without being aware that Beech-Nut Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Hyden and Texas Subclass Members suffered damages by purchasing Beech-Nut Baby Foods because they would not have purchased Beech-Nut Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

216.    Defendant Beech-Nut's deceptive trade practices caused injury in fact and actual damages Plaintiff Hyden and Texas Subclass Members in the form of the loss or diminishment of value of Beech-Nut Baby Foods Plaintiff Hyden and Texas Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Hyden and Texas Subclass Members. The injuries Plaintiff Hyden and Texas Subclass Members were to legally protected interests. The gravity of the harm of Defendant Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

217.    Plaintiff Hyden and Texas Subclass Members seek relief for the injuries they have suffered as a result of Defendant Beech-Nut's unfair and deceptive acts and practices, as provided by TDTPA and applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, prays for judgment against the Defendant as to each and every count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class and Subclasses, and requiring Defendant to bear the costs of class notice;

B.    An order enjoining Defendant from selling the Beech-Nut Baby Foods until the levels of heavy metals are removed or full disclosure of the presence of such appears on all labels, packaging, and advertising;

C.    An order enjoining Defendant from selling the Beech-Nut Baby Foods in any manner suggesting or implying that they are healthy, natural, and safe for consumption;

D.    An order requiring Defendant to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

E.      An order requiring Defendant to engage in testing of its finished products to measure the levels of heavy metals; and

F.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Dated:  February 24, 2021                                 Respectfully submitted,

FARUQI & FARUQI, LLP

*/s/ Innessa M. Huot*
Innessa M. Huot (Bar Roll #519963)
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
ihuot@faruqilaw.com

Steven L. Bloch
Ian W. Sloss
Zachary Rynar
**SILVER GOLUB & TEITELL LLP**
184 Atlantic Street
Stamford, CT 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
sbloch@sgtlaw.com
isloss@sgtlaw.com
zrynar@sgtlaw.com

*Attorneys for Plaintiff*